IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MCAFEE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CASE NO. _____ |
| JENNIFER E. KINNEY; ALAN P. COE; | § | |
| PERCY O. TEJEDA; AND TANIUM, | § | |
| INC.; | § | |
| | § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT

### Summary of Action

This is an action for trade secret misappropriation under 18 U.S.C. § 1836, and includes claims under state law for trade secret misappropriation, breach of contract, tortious interference, breach of fiduciary duty, aiding and abetting, and conspiracy. Plaintiff MCAFEE, LLC ("McAfee" or "Plaintiff") formerly employed Defendants JENNIFER KINNEY ("Kinney") ALAN P. COE ("Coe"), and PERCY O. TEJEDA ("Tejeda") (collectively, the "Employee Defendants") in highly compensated positions supporting McAfee's sales staff.  The job functions of each of the Employee Defendants required an intimate knowledge of the "secret sauce" underlying McAfee's sales tactics and customer strategies, and each of the Employee Defendants executed an Employment Agreement containing confidentiality and non-solicitation provisions as a condition of their employment.

Late last year, Tejeda resigned from McAfee and accepted a position with a direct competitor, Defendant Tanium, Inc. ("Tanium").  Earlier this year, Tejeda began soliciting Kinney, who Tejeda had supervised at McAfee, to join Tanium.  Kinney resigned from McAfee on March 28, 2019, and accepted a comparable sales management position at Tanium reporting to Tejeda.

After learning about Tejeda's recruitment of Kinney, McAfee wrote to Tejeda (with a copy to Tanium) to remind Tejeda of the continuing obligations not to use confidential information or to solicit employees that he owed to McAfee.  Tejeda did not respond.  Instead, an in-house lawyer for Tanium, sent a letter on May 13, 2019, informing McAfee that Tanium was hiring Coe, another sales support executive who formerly reported to Tejeda, in addition to Kinney.

Faced with a competitor replicating McAfee's sales support team, McAfee commissioned a forensic analysis of the McAfee computers used by Kinney and Coe to determine whether they had taken confidential information upon their departures.  That analysis revealed they had.  In fact, those two Employee Defendants engaged in a pattern of accessing confidential McAfee information both before and after announcing their resignations from McAfee.  Unauthorized actions by Kinney included emailing confidential McAfee sales documents to her private email address *__after__* she announced her resignation, creating Google Drive[1] folders entitled "**MCAFEE – Google Drive**" and "**WORK – Google Drive**" during her last week, and accessing those cloud storage folders concurrent with confidential McAfee files.  Coe also accessed numerous confidential files while using unauthorized USB devices on his last day at McAfee.

The information taken by the Employee Defendants for the benefit and/or at the direction of Tanium constitutes trade secrets of McAfee.  The actual and threatened disclosure and use of these trade secrets violates the Defend Trade Secrets Act, the Texas Uniform Trade Secrets Act, the contracts signed by the Employee Defendants, and the common law of the State of Texas.  McAfee brings this action to remedy those violations and to prevent further harm from the Defendants' actions.

---

[1] A Google Drive is a cloud-based, file hosting service offered by Google.  Google Drive allows users to store files on the Google servers, synchronize files across devices, and share files.  *See* https://www.google.com/drive/using-drive/.

## I.      PARTIES

1.      Plaintiff McAfee is a Delaware limited liability company with its principal place of business in California.

2.      Defendant Jennifer E. Kinney is an individual who resides in Frisco, Collin County, Texas.  Kinney may be served at her place of residence at 7448 Ravenhill Drive, Frisco, TX 75035.

3.      Defendant Alan P. Coe is an individual who resides in Bethesda, Montgomery County, Maryland.  Coe may be served at his place of residence, 5007 Allan Rd., Bethesda, MD 20816-2719.  Alternatively, because Coe engages in business in this State but does not maintain a regular place of business or a designated agent for service here and this lawsuit arises out of that business, Coe may be served with process by serving the Texas Secretary of State at Service of Process, Secretary of State, P.O. Box 12079, Austin, TX  78711-2079.  *See* FED. R. CIV. P. 4(e); TEX. CIV. PRAC. & REM. CODE § 17.044(b).

4.      Defendant Percy O. Tejeda is an individual who resides in Elk Grove, Sacramento, County, California. Tejeda may be served at his place of residence, 6825 Fox Cliff Way, Elk Grove, CA 95758.  Alternatively, because Tejeda engages in business in this State but does not maintain a regular place of business or a designated agent for service here and this lawsuit arises out of that business, Tejeda may be served with process by serving the Texas Secretary of State at Service of Process, Secretary of State, P.O. Box 12079, Austin, TX  78711-2079.  *See* FED. R. CIV. P. 4(e); TEX. CIV. PRAC. & REM. CODE § 17.044(b).

5.      Defendant Tanium, Inc. is a Delaware corporation with its principal place of business in Emeryville, California.  Tanium is registered to do business in the State of Texas and may be served through its registered agent in the State of Texas, Cogency Global, Inc., 1601 Elm St., Suite 4360, Dallas, TX 75201.

## II.     JURISDICTION AND VENUE

6.      This is an action for trade secret misappropriation arising under Title 18 of the United States Code, as well as statutory, contractual, and tort claims under the laws of the State of Texas.

7.      This Court has original jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's claims under Texas Law pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), as a district within which a defendant resides and as a district in which a substantial part of the events and omissions giving rise to the claims occurred.

9.      The Defendants are each subject to personal jurisdiction in this Court.  Each Defendant has sufficient minimum contacts with the State of Texas to satisfy due process and/or the requirements of the Texas Long Arm Statute and each Defendant has purposefully availed her/his/itself of the benefits and burdens of Texas law and/or the privileges of conducting business in the State of Texas, including as follows:

(1) Defendant Kinney is a domiciliary, resident, and citizen of the State of Texas;

(2) Defendant Coe has contractually consented to the application of Texas law, has consented to jurisdiction and venue in the State of Texas[2], and has participated in the commission of intentional torts with a resident of the State of Texas;

_____

[2] Coe expressly consented in §12(d) of his Proprietary Information Agreement to the exercise of personal jurisdiction and venue in the "state and Federal courts located in the Northern District of Texas" for any dispute arising under that agreement.  With Coe having consented to jurisdiction in Texas in a neighboring district and having participated with the other Defendants in the wrongful conduct alleged herein, McAfee contends that it would be fundamentally fair, substantially just, and judicially efficient for this Court to exercise personal jurisdiction over all Defendants in a single action.  If Coe objects and the Court finds that jurisdiction and/or venue in this district is improper, McAfee respectfully requests that the Court sever the claims against Coe and transfer the severed action to the Northern District of Texas pursuant to 28 U.S.C. § 1406(a) with a

(3) Defendant Tejeda has intentionally directed tortious conduct at McAfee's operations in this State with the knowledge that the effects of that wrongful conduct would be felt here.  Specifically, Tejeda has reached into Texas in bad faith to solicit Kinney for employment at Tanium, tortiously interfered with Kinney's obligations under her Employment Agreement, aided and abetted Kinney's breach of fiduciary duties owed to McAfee, and misappropriated and conspired with Kinney and others to misappropriate McAfee's trade secrets in Texas.

(4) Defendant Tanium, through its agent Tejeda, has also intentionally directed tortious conduct at McAfee's operations in this State with the knowledge that the effects of that wrongful conduct would be felt here.  In addition, Tanium has registered to do business in Texas—willingly submitting itself to the benefits and burdens of Texas law for the business it conducts here—and has specifically consented to the service of legal process through an agent located in this State.

### III.    BACKGROUND FACTS

10.    The allegations set forth in paragraphs 1 – 10 and the Summary of Action are incorporated herein.

11.    McAfee is a leading-edge cybersecurity company that provides advanced security solutions to consumers, small and large businesses, enterprises, and governments. Security technologies from McAfee use a unique, predictive capability that is powered by McAfee Global Threat Intelligence, which enables home users and businesses to stay a step ahead of the next wave of fileless attacks, viruses, malware, and other online threats.

---

suggestion that the action be transferred back to this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

**Original Complaint**                                                                                        **Page 5 of 24**

12.     Tanium is a direct competitor of McAfee.  Both Tanium and McAfee provide cybersecurity products and services, and both companies target the same or similar clients throughout the United States for sales of those products and services.

**A.     The Employee Defendants Worked with Key McAfee Clients.**

13.     Kinney, Coe, and Tejeda are all former McAfee employees who worked together as part of McAfee's sales support team.  Kinney and Coe each held the title of "Key Deal Manager," and they reported to Tejeda whose title was "Director, Finance."  As Key Deal Managers for McAfee, Kinney and Coe earned six-figure base salaries and were eligible for bonuses.  Tejeda was the former global head of sales support within finance and was also highly compensated with a base salary and potential bonuses exceeding those of Kinney and Coe.

14.     In their roles at McAfee, the Employee Defendants supported McAfee's sales teams by helping them to solicit, obtain, and keep the business the sales people targeted.  The Employee Defendants helped the sales teams that they supported to formulate presentations to clients, structure contracts, negotiate pricing, and otherwise establish and maintain client relationships.  Performing these support functions required the Employee Defendants to gain and maintain an intimate knowledge of the "secret sauce" underlying McAfee's sales tactics and customer strategies, including McAfee's pricing information, marketing plans, customer lists, deal flow, negotiating methods, personnel, and other confidential and proprietary sales information.  Though the Employee Defendants were assigned to different McAfee offices (Kinney in Texas, Coe in Virginia, and Tejeda in California), they frequently collaborated in their sales support roles.

15.     The sales and customer relationships that Kinney and Coe managed at McAfee and that Tejeda supervised were large and important to the finances of the Company—hence "Key Deals."  These sales and customer relationships involved tens-of-millions of dollars in revenues for McAfee, and the confidential and proprietary sales information described above helps McAfee to

**Original Complaint**                                                                                           **Page 6 of 24**

acquire, maintain, and grow these relationships.  McAfee has spent many years and many millions of dollars developing and refining this "secret sauce" of sales tactics, marketing plans, pricing, and customer strategies.  If a competitor were to acquire this information without similar expenditure of time, money, and effort, McAfee's market position and customer goodwill would suffer, jeopardizing millions of dollars in annual sales.

**B.      The Employee Defendants Signed Confidentiality Agreements.**

16.      Due to the nature of McAfee's business, McAfee prohibits the unauthorized disclosure, modification, use, or loss of its proprietary and confidential information because such unauthorized actions could damage McAfee; undermine its competitive advantage; give competitors vital business, financial, technical or marketing information; and/or impair the value of McAfee's intellectual property.

17.      McAfee imposes both physical and technological barriers to accessing its confidential and proprietary information.  For example, McAfee controls physical access to its facilities with external and internal locked doors, by employing security personnel, and by requiring the use of access badges for employees and visitors.  McAfee similarly restricts computer system access by, among other things, the use of security software; by requiring unique usernames and passwords for employees; by limiting access to computer files to employees with a need-to-know; and by tracking the computer usage of those with access to the system.

18.      In addition, to protect McAfee's proprietary and confidential information, McAfee requires its employees to execute confidentiality agreements.  For example, each of the Employee Defendants executed an "Employment Agreement" with McAfee containing confidentiality provisions.  True and correct copies of each of those Employment Agreements are attached as Exhibits A-C to the Declaration of Brent Sturman that is attached hereto as Exhibit 1.

19.      In their respective Employment Agreements, each Employee Defendant agreed and acknowledged that she or he would keep all non-public information learned in connection with McAfee's business confidential, both during and after employment:

> During and after my McAfee employment, I will hold in strict confidence and not disclose or use any Confidential Information connected with McAfee business or the business of McAfee's suppliers, customers, employees, or contractors unless (i) such disclosure or use is required in connection with my McAfee work, (ii) such information becomes lawfully and publicly known outside McAfee, or (iii) [a] McAfee officer expressly authorizes such disclosure or use in advance and in writing.

Employment Agreement §3.

20.      The Employment Agreement defines "Confidential Information" to include, without limitation "technical information . . . business information . . . personnel information . . . and other non-public McAfee data and information of similar nature." *Id.*

21.      Each Employee Defendant further agreed, "to return to McAfee all of its Confidential Information (hard or soft copies; originals and copies) as well as all devices and equipment belonging to McAfee (including computers, handheld electronic devices, telephone equipment and other electronic devices) either at the termination of [her] McAfee employment or upon McAfee's request." *Id.*

22.      In addition, each Employee Defendant agreed that "any violation of this provision [§3] will result in immediate and irreparable injuries and harm to McAfee, and that McAfee shall be entitled to all available legal and equitable remedies, including injunctive relief and specific performance, without having to post bond." *Id.*

23.      The Employee Defendants also agreed that they would not utilize any Confidential Information learned in the course of their employment with McAfee to help any third party target, identify, or solicit business from McAfee customers or induce McAfee employees to leave their employment:

> I further agree that I shall not use or disclose McAfee Confidential Information to aid any third party to target, identify, and/or solicit McAfee customers or McAfee employees to leave McAfee employment and/or misappropriate McAfee trade secrets or assist or aid any third party in any manner to do the same.

Employment Agreement §6.

24.     As with the confidentiality provisions, the Employee Defendants agreed that a violation of this non-solicit provision would warrant the issuance of injunctive relief against them:

> I agree that any violation of this provision [§6] will result in immediate and irreparable injuries and harm to McAfee, and that McAfee shall be entitled to all available legal or equitable remedies, including injunctive relief and specific performance, without having to post bond.

*Id.*

25.     In exchange for these promises by the Employee Defendants in the Employment Agreement, McAfee employed each Employee Defendant and provided Confidential Information to each of them during the course of their employment that McAfee would not otherwise have given them, but for the promises each made in their respective Employment Agreement.

26.     In addition to signing an Employment Agreement, Coe also signed a "Proprietary Information and Inventions Assignment Agreement" (the "Proprietary Information Agreement") with McAfee that contains confidentiality provisions. A true and correct copy of the Proprietary Information Agreement is attached as Exhibit D to the Declaration of Brent Sturman.

27.     In the Proprietary Information Agreement, Coe specifically acknowledged the confidential nature of his relationship with McAfee and agreed to keep McAfee's proprietary information confidential:

> (a) Employee's employment by the Company creates a relationship of confidence and trust between the Company and Employee with respect to the "Proprietary Information  of  the Company" (as defined below); (b) the Proprietary Information of the Company has commercial value in the business in which the Company is engaged; and (c) during the term of Employee's employment  by  the  Company and at all times thereafter, Employee will hold all Proprietary Information of the Company that Employee has received prior to the date hereof, and that

**Original Complaint**                                                                                      **Page 9 of 24**

Employee receives following the date hereof, in strict confidence and will neither use any such Proprietary Information of the Company nor disclose it to anyone, except to the extent necessary to carry out Employee's responsibilities and services as an employee of the Company.  Employee will promptly notify the Company, in writing, of any misappropriation or misuse of Proprietary Information of the Company of which Employee becomes aware.

Proprietary Information Agreement §2.

28.     The Proprietary Information Agreement defines "Proprietary Information of the Company" to include all information in any form pertaining to McAfee or its business:

"**Proprietary Information of the Company**", whether in tangible or intangible form, means any and all information pertaining in any manner to the Company or its business, including without limitation:  (i) information concerning the techniques,  processes, formulas, improvements, ideas, and methods of the Company; . . . (vi) the Company's business plans and methods; . . . (viii) the Company's marketing or sales strategies and techniques; (ix) information about pricing of the Company's products  or  services; (x) lists of and information concerning existing or potential clients, customers, consultants, suppliers, vendors, strategic partners and other business relations; (xi) employee personnel files and information about employee compensation and benefits . . . .

*Id.* §3(b).

29.     In addition, Coe undertook affirmative obligations in the Proprietary Information Agreement to return technology resources of the Company, like email, and not to keep copies of those resources when his employment ended:

Employee agrees (a) to comply with all of the Company's security policies and procedures as in force from time to time, including those regarding computer, telephone and voicemail equipment and systems . . . e-mail systems, computer networks, document storage systems, . . . and communication technologies (collectively, "**Technology   Resources**"), and (b) not to   access or use any Technology Resources except as authorized by the Company . . . Upon the voluntary or involuntary termination of Employee's employment with the Company for any reason, or upon the Company's request at any time during Employee's employment with the Company, Employee will immediately deliver to the Company, and will not keep in Employee's possession, recreate or deliver to anyone else, any and all Technology Resources or Proprietary Information of the Company that is in Employee's possession or control, whether developed by Employee pursuant to Employee's employment with the Company, obtained by Employee in connection with Employee's employment with the Company or otherwise belonging to the Company.

**Original Complaint**                                                                                  **Page 10 of 24**

*Id.* § 8.

30.     Further, Coe agreed to the application of Texas law and consented to jurisdiction and venue in Texas for disputes arising under the Proprietary Information Agreement. *Id.* § 12(c) & (d).

31.     As with the Employment Agreement, McAfee employed Coe and provided Proprietary Information of the Company to Coe during the course of that employment that McAfee would not otherwise have given Coe, but for the promises Coe made in the Proprietary Information Agreement.

**C.     Tejeda and Tanium Induced Kinney and Coe to Resign from McAfee.**

32.     On March 28, 2019, Kinney resigned her employment at McAfee.  Unknown to McAfee at the time, Kinney had spent the preceding weeks being recruited by Tejeda and interviewing for employment with Tanium.  Kinney officially received and accepted an offer of employment at Tanium the day before she resigned her employment at McAfee.  In this position at Tanium, Kinney is likely to face many of the same sales teams and customers that she formerly managed at McAfee.

33.     Upon learning of Kinney's recruitment by Tejeda to join Tanium, McAfee wrote to Tejeda with a copy to Tanium, reminding Tejeda of his contractual obligation not to solicit McAfee employees.

34.     Tejeda did not respond to McAfee's letter.  Instead, an in-house lawyer for Tanium responded to McAfee on May 13, 2019.  Though the Tanium letter claimed that Tanium would police its employees, the letter also informed McAfee that Tanium had just hired Coe, the third member of the former McAfee sales support team.

35.     With Tanium now targeting multiple McAfee employees and placing them in positions with the same job responsibilities and reporting structure, McAfee sent another letter on

May 16, 2019, addressed individually to Tanium, Kinney, Coe, and Tejeda.  McAfee again insisted that its former employees comply with their contractual obligations and that Tanium not interfere with those contractual relationships.  McAfee demanded assurances from the Employee Defendants that they would abide by their contractual obligations, and McAfee demanded that they take specific actions to protect against further use or disclosure of McAfee's trade secrets.

36.     The Employee Defendants did not respond to McAfee's May 16, 2019, letter.  Instead, Tanium sent a three-paragraph response on May 23, 2019, claiming that it "takes these matters seriously" while ignoring McAfee's specific demands.

**D.     Forensic Analysis of the McAfee Computers Show Misappropriation of McAfee's Confidential and Proprietary Information.**

37.     Given this targeting of a McAfee team by Tanium and the refusal of those former employees to provide requested assurances, McAfee commissioned a forensic review and analysis of the computers McAfee had provided Kinney and Coe for use in their jobs at McAfee (the "McAfee Computers").

38.     Through the use of computer forensics, McAfee has discovered that Kinney and Coe each accessed numerous confidential McAfee sales documents while pursuing employment at Tanium—and even ***after*** announcing their resignations from McAfee—for which neither appears to have had a legitimate McAfee business purpose.

39.     For example, after interviewing with Tanium and a few days before Kinney resigned from McAfee, Kinney used a McAfee Computer to search google.com for "how to store files on Google drive."[3]  Kinney then used the McAfee Computer to access numerous Google Drive folders—

---

[3] A Google Drive is a cloud-based, file hosting service offered by Google.  Google Drive allows users to store files on the Google servers, synchronize files across devices, and share files.  *See* https://www.google.com/drive/using-drive/.

including storage folders entitled "**MCAFEE – Google Drive**" and "**WORK – Google Drive**".
Kinney also used several unauthorized USB devices on the McAfee Computer during this recruitment
period.

40.     Though the forensics could not determine definitively the extent to which Kinney
copied McAfee files to the unauthorized cloud storage or USB devices,[4] the forensics show Kinney
accessed confidential McAfee sales documents concurrently with her use of the Google Drives and
USB devices.  For example, Kinney repeatedly used Google Docs to access a file entitled "Work
Financials" in the WORK – Google Drive folder in the days leading up to her resignation.  A file with
the same name had previously existed on the McAfee Computer, but Kinney deleted it from the
McAfee Computer the same day she created the WORK folder on Google Drive, suggesting she had
moved the file to the Google Drive.  Kinney's use of Google Docs also coincides with her accessing
multiple McAfee network folders containing information about McAfee contracts, suggesting she
copied information from files in those folders to the Google document.

41.     In addition, it appears from the computer forensic analysis that Kinney emailed
highly confidential and valuable sales and marketing information out of the Company while she
was still an employee of McAfee.  Specifically, the forensic analysis of the McAfee Computer
shows that Kinney composed an email using one of her personal Gmail accounts
(jekinney77@gmail.com)   the day before Kinney resigned from McAfee (which was the day
Kinney received her official offer of employment from Tanium).  The computer records show that
Kinney opened two files on the McAfee Computer while creating that email—Chris_DAM Proposal
3yr (Q-00059789).xlsx and Deak Desk Deal Tracker.xlsx—meaning Kinney likely attached those

---

[4] To obtain additional proof, McAfee will need access to the Google Drives and USB devices.
Accordingly, McAfee is submitting a motion for expedited discovery concurrently with this
complaint to gain access to those materials.

documents to the email.  While both of these Excel files contain confidential McAfee customer information, the Deal Tracker file is particularly sensitive.  The Deal Tracker file contains detailed information about **_hundreds_** of actual and potential McAfee sales—**including the name of the client, type of deal, forecasts, quotes, costs, representatives, and pricing notes**—from the first quarter of 2017 through the first quarter of 2019.  The Gmail account Kinney used for this email is the same Gmail account that she used to communicate with Tanium regarding her potential employment.

42.     In addition to these unauthorized activities before Kinney's resignation, Kinney also committed numerous unauthorized acts **_after_** she resigned.  For example, Kinney again accessed the Deal Tracker file after she announced her resignation.  There was no legitimate McAfee business purpose for Kinney to be accessing this confidential sales and marketing information at that time.

43.     Similarly, Kinney accessed an internal McAfee database containing detailed information about customer orders.  The information in those files includes pricing, product orders, contract renewal dates, and other proprietary information.  The files Kinney reviewed on the day she resigned from McAfee included orders that would be up for renewal in the coming months—precisely the kind of confidential information a competitor (like Tanium) could use to solicit that business.  There was no legitimate McAfee business purpose for Kinney to be accessing this confidential pricing, product, and customer information at that time.

44.     In addition, some of Kinney's last acts on the McAfee Computer were to forward nineteen emails to another of her personal email accounts (onesweetlime@gmail.com).  Several of those emails contained McAfee business files relating to recent sales, sales projections, customers, and the McAfee sales team.  For example, one file summarized McAfee's sales results in the western region for the fourth quarter of 2018 (the last complete quarter before Kinney's resignation), discussed performance of McAfee sales personnel, and contained information about McAfee's top accounts.

Another file contained similar information for McAfee's eastern region and focused on McAfee's sales strategies.  The third file discussed a multi-million dollar sale to a specific client and contained information about the client, the McAfee products sold, the sales team responsible, and the reasons for their success.  When Kinney sent those files to her personal email account, she had no work to perform for McAfee, those files had not become lawfully and publicly known outside McAfee, and no McAfee officer had pre-authorized the disclosure of those files.

45.     Through the forensic computer analysis, McAfee has also discovered that Coe, like Kinney, used his McAfee Computer to access numerous confidential McAfee documents on his last day of employment with McAfee.

46.     Particularly problematic with Coe is his access to email archives containing information about some of McAfee's largest clients.  One archive, in particular, contains emails relating to a multi-million dollar client of McAfee whose business is currently up for renewal.  Coe was working on that renewal project before he resigned, and Tanium is competing with McAfee for that business.  The forensic analysis shows that Coe accessed that archive and then one minute later plugged a USB printer with storage capability into the McAfee Computer.

47.     The forensic analysis further showed that Coe accessed at least a dozen other files and folders containing confidential and proprietary McAfee information on the day he resigned. Given Coe's resignation, there was no further work for him to perform for McAfee and no McAfee business purpose for him to access that information.

48.     Attached hereto as Exhibit 2 is the Declaration of Lee Whitfield describing results from the forensic analysis of the McAfee Computers used by Coe and Kinney.

### IV.     CAUSES OF ACTION

### Claim I – Misappropriation of Trade Secrets Under 18 U.S.C. § 1836, *et seq.*
### (All Defendants)

49.     McAfee re-alleges and incorporates the allegations in the preceding paragraphs.

50.     McAfee is the owner of certain trade secrets relating to sales tactics and customer strategies, including pricing information, marketing plans, customer lists, deal flow, negotiating methods, personnel, and similar confidential and proprietary sales information.

51.     These trade secrets relate to products used in, and intended for use in, interstate commerce.

52.     McAfee has taken reasonable measures to keep this information secret.  Such measures include the requirement that each of the Employee Defendants enter into the Employment Agreements shown in Exhibits A-C and that Coe enter into the Proprietary Information Agreement shown in Exhibit D.  McAfee has also restricted physical access and computer system access to such information as described herein.

53.     McAfee's trade secrets derive independent economic value, both actual and potential, from not being generally known to, and not readily ascertainable through proper means by, another person (like Tanium) who can obtain economic value from the disclosure or use of the information.

54.     The Defendants, individually and/or acting in concert, have misappropriated McAfee's trade secrets by accessing, copying, duplicating, downloading, uploading, e-mailing, and/or otherwise conveying McAfee's trade secrets without authorization and in knowing violation of the confidentiality agreements signed by the Employee Defendants and other restrictions imposed by law.

55.     The Defendants, individually and/or acting in concert, threaten further misappropriation.  McAfee and Tanium are direct competitors.  Tanium has recreated a McAfee sales support team by hiring two Key Deal Managers and placing them in comparable positions

reporting to the same individual at Tanium who formerly supervised them at McAfee.  The similarity of the positions, responsibilities, and reporting structure of the Employee Defendants at the two companies makes it is unlikely that the Employee Defendants can perform their jobs at Tanium without using McAfee's confidential and proprietary information to aid Tanium in the solicitation of McAfee's customers and employees.  Rather, it is probable that the Employee Defendants will continue to misappropriate McAfee's trade secrets for the benefit of Tanium unless restrained by the Court from doing so.

56.     To prevent further threatened and actual misappropriation by Defendants, McAfee requests that the Court enter temporary and permanent injunctive relief, as provided by 18 U.S.C. § 1836(b)(3)(A), and has filed an Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction contemporaneously herewith.

57.     In addition, McAfee has suffered actual loss from this misappropriation and threatened misappropriation of its trade secrets, and/or Defendants have been unjustly enriched by their misappropriation, entitling McAfee to an award of damages under 18 U.S.C. § 1836(b)(3)(B).  Moreover, Defendants' misappropriation was willful and malicious, supporting an award of exemplary damages under 18 U.S.C. § 1836(b)(3)(C).

**Claim II – Misappropriation of Trade Secrets Under TUTSA (Tex. Civ. Prac. & Rem. Code §134A.001, *et seq.*) (All Defendants)**

58.     McAfee re-alleges and incorporates the allegations in the preceding paragraphs.

59.     McAfee's confidential information regarding its financial data (including highly sensitive and non-public correspondence and agreements; financial records, statements, and related documents; pricing information; customer information; personnel information; and similar non-public data) have economic value to McAfee because such information is not generally known or readily ascertainable through proper means by persons including competitors of McAfee, who

may obtain economic value from its use.  McAfee takes reasonable efforts to protect the secrecy of such confidential and proprietary information through physical security, confidentiality agreements, and electronic and data security measures.  As such, this information qualifies as trade secrets under the Texas Uniform Trade Secrets Act ("TUTSA").

60.     TUTSA specifically authorizes injunctive relief both to remedy existing misappropriation and to prevent the threatened misappropriation of trade secrets.

61.     McAfee provided the Employee Defendants with information constituting trade secrets within the meaning of TUTSA during the course of their employment, as described above.  Those trade secrets are the exclusive property of McAfee.

62.     By taking such trade secret information without permission, the Employee Defendants have committed actual misappropriation in violation of TUTSA.

63.     In addition or in the alternative, because Tanium, a direct competitor of McAfee, now employs the Employee Defendants in positions comparable to the positions they held at McAfee and with a comparable reporting structure, it is probable that the Employee Defendants will use or disclose McAfee's trade secrets for the benefit of their new employer, Tanium.  This threat of further use or disclosure is also a violation of TUTSA.

64.     This actual and/or threatened misappropriation of McAfee's trade secrets has or will cause irreparable harm for which monetary compensation is insufficient.  McAfee is thus entitled to temporary, preliminary, and permanent injunctive relief to prevent Defendants from continuing to misappropriate, or to threaten to misappropriate, McAfee's trade secrets.

65.     McAfee also prays that it recover its monetary damages for Defendants' actual and threatened misappropriation of McAfee's trade secrets.  Moreover, because Defendants' actions

constitute willful and malicious misappropriation, McAfee requests an award of exemplary damages as provided by TUTSA.

<u>**Claim III – Breach of Contract (Against Employee Defendants)**</u>

66.     McAfee re-alleges and incorporates the allegations in the preceding paragraphs.

67.     The Employment Agreements are valid and enforceable contracts between McAfee and the Employee Defendants. Likewise, the Proprietary Information Agreement is a valid and enforceable agreement between McAfee and Coe.

68.     In breach of those agreements, Employee Defendants have failed to hold Confidential Information and Proprietary Information of the Company (as defined in those agreements) in strict confidence, and they have used, disclosed, and/or failed to return such information as required by those agreements.

69.     In addition or in the alternative, Employee Defendants have failed to perform in good faith and have breached those agreements (as applicable) by using and/or disclosing information to assist or aid third parties (*e.g.*, Tanium) to target, identify, and/or solicit McAfee customers or employees and/or to misappropriate McAfee trade secrets.

70.     Employee Defendants' breaches of these agreements and use and/or disclosure of McAfee's Confidential Information and/or Proprietary Information of the Company have caused or will cause McAfee injury—and Tanium unjust enrichment—by undermining McAfee's competitive advantage, providing its competitor with vital business, financial, technical or marketing information, and/or impairing the value of McAfee's intellectual property and goodwill.

71.     The Employee Defendants each acknowledged and agreed that violations of their agreements would result in immediate and irreparable injuries and harm to McAfee and would entitle McAfee to receive all available legal and equitable remedies, including injunctive relief and specific performance, without the need of posting a bond.

72.     Unless the Court restrains the Employee Defendants from these violations of their contractual obligations, McAfee will continue to suffer these irreparable injuries for which it has no adequate remedy at law.  These irreparable injuries include the potential for further disclosure, use, or destruction of McAfee's confidential and proprietary information, which includes highly sensitive and non-public technical information, business information, personnel information, and other McAfee data and information of similar nature.

73.     The threatened injury to McAfee outweighs any injury or legal right, which might be asserted by the Employee Defendants.  McAfee has a substantial likelihood of success on the merits of this action; thus, the issuance of a temporary restraining order, preliminary injunction, and permanent injunctive relief will not injure the public interest.

74.     Accordingly, McAfee prays that the Court issue a temporary restraining order, preliminary injunction, and permanent injunction in this case.

75.     In addition, McAfee prays that it recover monetary damages based on the Employee Defendants' breaches of their contractual duties.

### Claim IV – Tortious Interference with Contract (Tejeda and Tanium)

76.     McAfee re-alleges and incorporates the allegations in the preceding paragraphs.

77.     McAfee has valid, enforceable agreements with each of the Employee Defendants.

78.     Tejeda has, at all relevant times, had actual knowledge of these contracts—indeed Tejeda has executed a substantively identical Employment Agreement—and Tanium has imputed knowledge through Tejeda as its agent.  Moreover, McAfee informed Tanium and Tejeda of the agreements after it learned that Tanium had recruited Kinney.

79.     Tejeda and Tanium interfered with the obligations of Kinney and Coe under their agreements by inducing Kinney and Coe to violate those agreements.  In addition, Tanium

interfered with Tejeda's agreement by inducing Tejeda to violate his agreement by recruiting Kinney and/or Coe.

80.     McAfee has suffered harm, and Tejeda and Tanium have been unjustly enriched, as a result of these wrongful actions, and McAfee prays that it recover the damages Tejeda and Tanium have caused.  In addition, the actions of Tejeda and Tanium were willful and malicious and support an award of exemplary or punitive damages.

### Claim V – Breach of Fiduciary Duty (Kinney and Coe)

81.     McAfee re-alleges and incorporates the allegations in the preceding paragraphs.

82.     While employed by McAfee, Kinney and Coe owed fiduciary duties of loyalty, candor, and care to act in the best interests of McAfee as employees.  Even after resigning, Kinney and Coe retained a fiduciary duty not to use or divulge McAfee's trade secrets.

83.     Kinney and Coe, however, breached these fiduciary duties when each accessed, downloaded, uploaded, e-mailed, or otherwise took McAfee's confidential and proprietary business information and trade secrets without permission or a business purpose for McAfee while still employed by McAfee.

84.     In addition, after their respective resignations from McAfee, Kinney and Coe continued to possess McAfee's trade secrets and probably disclosed and used those McAfee trade secrets in comparable positions with Tanium.

85.     McAfee has suffered, and will suffer, harm from these breaches of fiduciary duties, and Defendants—especially Tanium—have been, and will be, unjustly enriched.

86.     McAfee prays that it recover monetary damages for these breaches of fiduciary duties. In addition, the actions of Kinney and Coe were willful and malicious and support an award of exemplary or punitive damages.

### Claim VI – Aiding and Abetting Breach of Fiduciary Duty (Tejeda and Tanium)

87.     McAfee re-alleges and incorporates the allegations in the preceding paragraphs.

88.     A third party that knowingly induces a fiduciary to breach a duty or participates in the breach is liable as a joint tortfeasor.

89.     Tanium and Tejeda knew of the fiduciary duties Kinney and Coe owed as employees of McAfee, but induced those McAfee employees to violate their fiduciary duties and participated in those violations.

90.     Such actions have caused, and will continue to cause, harm to McAfee and unjust enrichment to Tanium, as described herein.

91.     McAfee prays that Tanium and Tejeda be held jointly and severally liable with Kinney and Coe for this harm, and that they be found liable for exemplary or punitive damages as well.

### Claim VI – Conspiracy to Misappropriate Trade Secrets, Tortiously Interfere with Contracts, and Breach Fiduciary Duties (All Defendants)

92.     McAfee re-alleges and incorporates the allegations in the preceding paragraphs.

93.     Defendants Tanium, Kinney, Coe, and Tejeda, conspired and agreed with and among some or all of each other to misappropriate McAfee's trade secrets, tortiously interfere with McAfee's contracts, and breach fiduciary duties owed to McAfee.

94.     In furtherance of and to accomplish the object of their agreement, Defendants committed the overt acts of misappropriation, interference, and breaches described herein.

95.     Such actions have caused, and will continue to cause, harm to McAfee and unjust enrichment to Tanium, as described herein.

96.     McAfee prays that Defendants be held jointly and severally liable for this harm, and that they be found liable for exemplary or punitive damages as well.

## Claim VII – Attorneys' Fees (All Defendants)

97.     McAfee re-alleges and incorporates the allegations in the preceding paragraphs.

98.     McAfee has presented its claims to Defendants, but Defendant have either failed to respond or failed to correct their behavior. Defendants' actions have forced McAfee to retain the undersigned attorneys in connection with the litigation of this matter, and McAfee has agreed to pay the undersigned attorneys a reasonable fee for their services.

99.     McAfee asks that this Court award McAfee its reasonable attorneys' fees and other costs pursuant to Chapter 38 and/or Section 134A.005 of the Texas Civil Practice & Remedies Code, or other applicable laws.

100.     Additionally, Defendants' misappropriation of McAfee's trade secrets was done willfully and maliciously. To that end, McAfee requests that the Court award McAfee its reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

## PRAYER

For the foregoing reasons and circumstances, created wholly by the conduct of Defendants, Plaintiff respectfully requests that the Court enter judgment against Defendants for all of the following:

a) Injunctive relief, including a temporary restraining order, preliminary injunction, and permanent injunction;

b) Actual damages;

c) Exemplary Damages;

d) Prejudgment and post judgment interest;

e) Costs;

f) Attorneys' fees; and

g) Such other relief, both at law and in equity, to which McAfee may be entitled.

DATED:        June 24, 2019

                                        Respectfully submitted,

                                          KATTEN MUCHIN ROSENMAN LLP

                                          */s/ Kelly D. Hine*
                                          Kelly D. Hine
                                          State Bar No. 24002290
                                          kelly.hine@kattenlaw.com
                                          Emily Travis
                                          State Bar No. 24079229
                                          emily.travis@kattenlaw.com
                                          Dorlin Lafer-Sousa
                                          State Bar No. 24098960
                                          dlsousa@kattenlaw.com

                                          1717 Main Street, Suite 3700
                                          Dallas, Texas 75201
                                          214.765.3600 Telephone
                                          214.765.3602 Facsimile

                                          **ATTORNEYS FOR PLAINTIFF**
                                          **MCAFEE, LLC**